NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

---

|                          |   |                                |
|--------------------------|---|--------------------------------|
| RICKY LEE JONES,         | : | Civil Action No. 19-451 (RMB)  |
|                          | : |                                |
| Petitioner,              | : | **OPINION**                    |
|                          | : |                                |
| v.                       | : |                                |
|                          | : |                                |
| WARDEN ORTIZ,            | : |                                |
|                          | : |                                |
| Respondent               | : |                                |

---

APPEARANCES:

RALPH A. JACOBS, ESQ.
Jacobs Singer Kivitz & Herman LLC
34 Tanner Street
Haddonfield, NJ 08033

JESSICA ROSE O'NEILL
JOHN ANDREW RUYMANN
KRISTIN LYNN VASSALLO
Assistant United States Attorneys
Office of the U.S. Attorney
District of New Jersey
401 Market St., 4th Floor
P.O. Box 2098
Camden, New Jersey 08101


**BUMB, United States District Judge**

This matter comes before the Court upon the Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Pet., ECF No. 1) by Petitioner Ricky Lee Jones, an inmate confined in the Federal Correctional Institution in Fort Dix, New Jersey. ("FCI Fort Dix.")

Petitioner claims that the Bureau of Prisons ("BOP") has denied him 195 days of good conduct time ("GCT"), in violation of the Due Process Clause of the Fifth Amendment, because the Bureau of Prisons refused to immediately act upon the amendment to GCT in the First Step Act ("First Step Act" or "the Act"), effective December 21, 2018. (Pet., ECF No. 1, ¶13.) Petitioner asserts that he should have been released from prison on March 10, 2019. (Id.)

Under 18 U.S.C. § 3006A, the Court appointed counsel to represent Petitioner. (Order, ECF No. 7.) Respondent filed its answer to the petition on March 25, 2019. ("Answer," ECF No. 8.) On April 26, 2019, Petitioner filed a reply to Respondent's answer. ("Petr's Reply," ECF No. 13.) Respondent filed a sur-reply. ("Sur-reply," ECF No. 15.) With permission of the Court, Petitioner filed a response to the sur-reply. ("Response to Sur-reply," ECF No. 16.) Respondent filed a reply to Petitioner's response. ("Respt's Reply to Response," ECF No. 18.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court will determine the habeas petition on the briefs, without oral argument. For the reasons discussed below, the habeas petition is denied.

I.    BACKGROUND

In 1996, Petitioner was convicted in the United States District Court, Southern District of Florida of:  (1) possession of marijuana; (2) carrying a firearm during and in relation to a drug trafficking offense; (3) being a felon in possession of a

2

firearm; and (4) possession of an unregistered shotgun. Jones v. Gallegos, 180 F. App'x 32, 33 (10th Cir. 2006) (per curiam). On January 3, 1997, the district court sentenced Petitioner to a 228-months aggregate term of imprisonment. (Declaration of Christina Clark[1] ("Clark Decl."), Ex. 1, ECF No. 8-3 at 3-4.) On January 23, 1998, the Eleventh Circuit affirmed the conviction and sentence. United States v. Jones, 132 F.3d 1460 (11th Cir. 1997) (table).

In 1997, Petitioner was convicted of assault in the United States District Court, Southern District of Georgia. United States v. Jones, No. 2:97-cr-0023-JRH-RSB (S.D. Ga.), ECF No. 41.[2] On April 7, 1998, he received a sentence of 100-months in prison, to run consecutively to the 228-month term imposed by the Southern District of Florida. (Clark Decl., Ex. 1, ECF No. 8-3 at 6.) Petitioner satisfied his 228-month sentence from the Southern District of Florida on January 14, 2012 and began to serve the 100-month consecutive sentence imposed by the Southern District of Georgia. (Id. at 6-7.)

Under 18 U.S.C. § 3624(b), the BOP calculated Petitioner's GCT by awarding 54 days of GCT for each year of incarceration served. (Clark Decl., Ex. 4, ECF No. 8-3 at 16.) Thus, the BOP

---

[1] Christina Clark is an attorney employed by the Bureau of Prisons who has access to Bureau of Prisons records maintained in the ordinary course of business. (Clark Decl., ECF No. 8-2, ¶1.)

[2] Available at www.pacer.gov.

awarded 54 days GCT for each year from January 14, 2012 through January 2019. (Clark Decl., Ex. 4, ECF No. 8-3 at 16.) The BOP expects to award 37 days of GCT for all time served between January 14, 2019, and September 25, 2019 (Petitioner's projected release date via GCT). (Answer, ECF No. 8 at 8.) According to the BOP, the total amount of GCT available to Petitioner for all time served in official detention as a result of his federal sentence is 415 days (54 x 7 + 37). (Clark Decl., Ex. 4, ECF No. 8-3 at 16.)

## II.  THE PETITION, ANSWER AND REPLIES

### A.  The Petition

Prior to appointment of counsel, Petitioner filed a *pro se* petition under § 2241, arguing that the BOP violated his right to Due Process by failing to give immediate effect to the First Step Act's amendment to 18 U.S.C. § 3624(b), which would have entitled him to release from prison on March 10, 2019. (Pet., ECF No. 1, ¶13.)

### B.  The Answer

Respondent contends Petitioner is not entitled to habeas relief because (1) Petitioner failed to exhaust his administrative remedies before filing the petition; (2) the First Step Act's amendment to 18 U.S.C. § 3624(b) does not take effect until after the Attorney General completes and releases the risk and needs assessment system established under Section 101(a) of the Act,

within 210 days of enactment; and (3) the BOP properly calculated Petitioner's GCT. (Answer, ECF No. 8.)

C.  Petitioner's Reply

In reply, Petitioner contends that the First Step Act's amendment to the GCT provision in 18 U.S.C. § 3624(b) became effective immediately upon enactment on December 18, 2018. (Reply, ECF No. 13 at 10-11.) Under the amended statute, Petitioner should have completed his sentence on March 10, 2019. (Id. at 11.)

Petitioner offers the following reasons why the amendment to § 3624(b) became effective immediately: (1) legislative history of the First Step Act repeatedly references the good time amendment as a "fix" to conform the statute to the original intent; (2) the 210-day "delay" provision of the First Step Act, which is the linchpin of the government's argument, was intended to apply only to the new programs established by the First Step Act; (3) the statutory context confirms that the delayed effective date should not apply to the amendment of § 3624(b); (4) the amendments in Section 102(b)(1)(B) of the First Step act use the phrase "this subsection" to mean subsection (g) of § 3624(g) governing new earned-time transfer to prelease custody; (5) courts construe legislation aimed at remedying prior drafting oversights to be immediately effective; (6) a delayed effective date would violate the Due Process Clause because federal prisoners have a protectable liberty interest in the statutory right to good time credit

provided by 18 U.S.C. § 3624(b); (7) a delayed effective date would violate the Equal Protection Clause because it would require greater-than-intended incarceration for the class of well-behaved prisoners who, but for the delayed effective date, would be immediately released from incarceration. (Reply, ECF No. 13 at 11-19.)

Petitioner also raises a concern that Respondent's "statement of facts" in the Answer foreshadows the possibility that the BOP will later argue that March 10, 2019, is not Petitioner's release date under the Act. (Id. at 20.) This concern arises from Respondent's apparent failure to treat Petitioner's consecutive sentences as a single aggregate term under 18 U.S.C. § 3584; thereby depriving him of GCT for his 228-month sentence. (Id. at 21.) Respondent's position is that the BOP will not calculate Petitioner's sentence under the First Step Act until the expiration of the 210-day period for the risk and needs assessment. (Id.) If the Court determines that the GCT provision in the First Step Act is immediately effective, and the BOP then determines that Petitioner will only receive GCT under the Act for his 100-month sentence rather than his aggregate sentence, it could be months before Petitioner exhausts his challenge to the sentence calculation, depriving Petitioner of his liberty even further beyond his lawful release date. (Id. at 22.) Because he has already been harmed by the BOP's failure to award GCT under the Act, and

he will be further harmed by the BOP's failure to calculate his release date immediately, Petitioner seeks interim relief of release from prison, subject to the terms of his sentence for supervised release. (Reply, ECF No. 13 at 22-23.)

D.    Respondent's Sur-reply

In sur-reply, Respondent argues that the cardinal canon of statutory construction is that if a statute's words are unambiguous, "the judicial inquiry is complete." (Sur-reply, ECF No. 15 at 1, quoting Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253 (1992). Section 102(b)(2) of the Act provides:

> EFFECTIVE DATE.—The amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of Chapter 229 of title 18, United States Code, as added by section 101(a) of this Act.

(Id. at 1.) Respondent contends the Court should not construe the statutory language "amendments made by this subsection" to mean "just one amendment made by this subsection," as Petitioner suggests. (Id. at 2.) Respondent distinguishes the statute discussed in Gozlon v. Peretz v. United States, 498 U.S. 395 (1991) because, unlike that statute, the First Step Act has an express effective date. (Id.)

In response to Petitioner's argument that there is no rational reason to delay the GCT amendment's effective date, Respondent maintains that delay gives the BOP time to prepare to recalculate

sentences for the entire federal inmate population and to process those entitled to immediate release. (Sur-reply, ECF No. 15 at 2.)

Respondent asserts that Petitioner's constitutional claims are meritless. (Sur-reply, ECF No. 15 at 2.) First, Petitioner has no Due Process Claim because he has no entitlement to immediately benefit from the new computation method. (Id.) Second, there is no Equal Protection Claim because the new computation method applies equally to all inmates, no matter if their convictions occurred before, on or after the effective date of the amendment. (Id.)

As to Petitioner's release date, Respondent asserts Petitioner's argument is premature because the BOP has not recalculated Petitioner's release date under the First Step Act and will not do so until the amended version becomes effective. (Id. at 3.)

E.    Petitioner's Response to Respondent's Sur-reply

In response to the sur-reply, Petitioner contends that Respondent's attempt to distinguish Gozlon-Peretz, 498 U.S. 395 (1991) misses the point. (Petr's Response, ECF No. 16 at 1.) Gozlon-Peretz supports the proposition that Congressional purpose is relevant to whether there is a "clear" Congressional directive that would defeat the presumption of an immediate effective date of a statute. (Id.)

In support of his Equal Protection Clause claim, Petitioner notes that Respondent ignored the cases cited by Petitioner "where

the effective date and sentencing credit calculations were treated as raising substantial equal protection concerns." (Id.) Further, Respondent's purported rational basis for the delay in effective date is belied by the fact that the BOP refuses to calculate Petitioner's sentence until the provision takes effect. In other words, the BOP, by its actions, is not using the delayed effective date to avoid having to recalculate all federal inmates' sentences at once. (Petr's Response, ECF No. 16 at 2.)

Regardless of the effective date, Petitioner asserts he is entitled to interim relief because "the mechanics of how the government plans to implement the new Act will guarantee that [Petitioner] will be kept in prison longer than lawfully allowed without any effective means of legal recourse…." (Id. at 3.) Thus, Petitioner asks the Court to conditionally release him and require the government to calculate his release date so that he may challenge it in Court without serving more time in custody than the law allows. (Id.)

F.    Respondent's Response

Respondent asserts that Petitioner is not entitled to conditional release on the effective date of the First Step Act because he is not in custody in violation of any law. (Respt's Response, ECF No. 18 at 1-2.) Petitioner is concerned that Respondent will treat his concurrent sentences as two different sentences for purposes of the administrative calculation of GCT

when they should be treated as a single aggregate term under 18 U.S.C. § 3584(c). (Id. at 1.) Respondent contends this is entirely speculative and that the BOP is diligently using the time period before the First Step Act's effective date to perform the calculations necessary to comply with the Act once it is effective. (Respt's Response, ECF No. 18 at 2.)

III. DISCUSSION

    A.   Exhaustion of Administrative Remedies

An inmate must exhaust his administrative remedies before a seeking habeas relief in a district court under 28 U.S.C. § 2241. Vasquez v. Strada, 684 F.3d 431, 433 (3d Cir. 2012); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760-62 (3d Cir. 1996). Under § 2241, the exhaustion requirement may be excused when exhaustion is futile. See e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998.)

Respondent acknowledges that Petitioner completed the first three steps of the BOP's administrative remedy program but failed to complete the final step, appeal to the General Counsel in the Central Office. (Clark Decl., ECF No. 8-2, ¶¶3-5.) On April 4, 2019, Petitioner filed an affidavit declaring that he filed a form BP-11 with the General Counsel's Office on February 22, 2019, and the time to respond has elapsed. (Affidavit of Ricky Lee Jones, ECF No. 11, ¶¶6-7.) Petitioner argues that completion of the administrative remedy process prior to filing his petition was

futile because his administrative remedy request was based on the BOP's "blanket position" regarding the statute, which was not likely to change upon further review. (Petr's Reply, ECF No. 13 at 23-24.)

Exhaustion of administrative remedies under § 2241 is not jurisdictional and may be excused under limited circumstances. Gambino, 134 F.3d at 171. Here, Petitioner completed all but the final level of administrative review before filing his habeas petition, and the BOP consistently denied relief based on its interpretation of Section 102(b)(2) of the First Step Act. (Clark Decl., Exs. 2-3, ECF No. 8-3 at 10-14.) There is an exception to the exhaustion requirement "when the issue 'involves only statutory construction.'" Bradshaw v. Carlson, 682 F.2d 1050, 1052-53 (3d Cir. 1981). The issues presented in the habeas petition fit within the "statutory construction" exception to exhaustion. Thus, the habeas petition may proceed without complete exhaustion of administrative remedies.

B.   Statutory Construction

This case presents an agency's interpretation of a statute that it administers.

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as

the agency, must give effect to the
unambiguously expressed intent of Congress.
If, however, the court determines Congress has
not directly addressed the precise question at
issue, the court does not simply impose its
own construction on the statute, as would be
necessary in the absence of an administrative
interpretation. Rather, if the statute is
silent or ambiguous with respect to the
specific issue, the question for the court is
whether the agency's answer is based on a
permissible construction of the statute.

Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S.

837, 842–43 (1984) (footnotes omitted); see also Connecticut Nat.

Bank, 503 U.S. at 253–54 ("When the words of a statute are

unambiguous … 'judicial inquiry is complete'") (quoting Rubin v.

United States, 449 U.S. 424, 430 (1981)). However, when

interpreting a statute "'[w]e consider not only the bare meaning'

of the critical word or phrase 'but also its placement and purpose

in the statutory scheme.'" Holloway v. U.S., 526 U.S. 1, 6 (1999)

(quoting Bailey v. United States, 516 U.S. 137, 145 (1995)). "If

the statutory language is unambiguous and 'the statutory scheme is

coherent and consistent' … '[t]he inquiry ceases.'" Kingdomware

Techs., Inc. v. United States, 136 S. Ct. 1969 (2016) (quoting

Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002)). "[A]bsent

a clear direction by Congress to the contrary, a law takes effect

on the date of its enactment." Gozlon-Peretz v. United States, 498

U.S. 395, 404 (1991) (citations omitted).

    C.   Construction of Section 102(b)(2) of the Act

Respondent argues that Section 102(b)(2) of the First Step Act unambiguously applies to all amendments made under Section 102(b) of the Act. Petitioner contends that the effective date in Section 102(b)(2) of the First Step Act unambiguously applies only to its amendment to 18 U.S.C. § 3624(g) and not to its amendment to 18 U.S.C. § 3624(b). The placement of the statutory provision at issue does not support Petitioner's conclusion.

The First Step Act, in Section 102(b)(1), amends 18 U.S.C. § 3624, "Release of a prisoner," in two respects. First, Section 102(b)(1)(A) amends the existing calculation of GCT in 18 U.S.C. § 3624(b)(1), as follows:

> (b) Prerelease Custody.—
>
> (1) IN GENERAL.—Section 3624 of title 18, United States Code, is amended—
>
> (A) in subsection (b)(1)—
>
> (i) by striking ", beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term," and inserting "of up to 54 days for each year of the prisoner's sentence imposed by the court,"; and
>
> (ii) by striking "credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence" and inserting "credit for the last year of a term of imprisonment shall be credited on the first day of the last year of the term of imprisonment"; . . .

As Petitioner contends, this was a fix to conform to the original intent of the statute after the Bureau of Prisons interpreted the GCT calculation based on time actually served rather than the sentence imposed. See O'Donald v. Johns, 402 F.3d 172, 174 (3d Cir. 2005) (court was obligated to defer to BOP's reasonable interpretation of ambiguous statute by calculating GCT based on time actually served); see Barber v. Thomas, 560 U.S. 474, 488-89 (2010) ("No one doubts that the BOP has the legal power to implement the statute in accordance with its language and purposes; hence we need not determine the extent to which Congress granted the BOP authority to interpret the statute [18 U.S.C. § 3624(b)] more broadly, or differently than it has done here"); see 115 Cong. Rec. S7314 (daily ed. Dec. 5, 2018) (statement of Sen. Ben Cardin) ("The bill makes a good time credit fix and revises the good-time credit law to accurately reflect congressional intent by allowing prisoners to earn 54 days of credit per year, rather than 47 days.")[3]

Second, Section 102(b)(1)(B) of the Act amends 18 U.S.C. § 3624 to create a new subsection (g) "PRERELEASE CUSTODY OR SUPERVISED RELEASE FOR RISK AND NEEDS ASSESSMENT SYSTEM

---

[3]  Available at
http://ca11.uscourts.libguides.com/ld.php?content_id=46447490.

PARTICIPANTS." This new subsection has eleven subparts that govern a program for "Risk and Needs Assessment System Participants."

After establishing the rules for the new Risk and Needs Assessment System Participants, the First Step Act, in Section 102(b)(2) provides:

> (2) EFFECTIVE DATE.—The amendments made by <u>this subsection</u> shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of chapter 229 of title 18, United States Code, as added by section 101(a) of this Act.

(emphasis added). If the phrase "this subsection" applied only to the amendments to 18 U.S.C. § 3624(g) "RERELEASE CUSTODY OR SUPERVISED RELEASE FOR RISK AND NEEDS ASSESSMENT SYSTEM PARTICIPANTS," as petitioner contends, logically, it would have been labeled subpart 12 to the new subsection (g) of § 3624. Instead, Congress placed this provision under Section 102(b)(2), which follows the amendments made to both § 3624(b) and § 3624(g).

The language of Section 102(b)(2) is unambiguous, and its placement indicates that the amendments to 18 U.S.C. § 3624(b) and § 3624(g) are not effective until "the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of chapter 229 of title 18, United States Code, as added by section 101(a) of this Act." See <u>United States v. Powell</u>, Criminal Action No. 5:11-cr-75-JMH-1, 2019 WL 1521972, at *3 (E.D. Ky. April 8, 2019) ("Section 102(b)(2) of the [First Step]

Act provides that the amendments made in subsection 102(b) of the Act take effect only when the Attorney General completes the "risk and needs assessment system" required by Section 101(a) of the Act") (alteration added); <u>Roy v. United States Bureau of Prisons</u>, NO: 2:19-CV-59-RMP, 2019 WL 1441622, at *1 (E.D. Wash. April 1, 2019) (the amendment to 18 U.S.C. § 3624(b) by the First Step Act "will not take effect until the Attorney General completes the "risk and needs assessment system…"); <u>Rizzolo v. Puentes</u>, No. 1:19-cv-00290-SKO (HC), 2019 WL 1229772, at *3 (E.D. Ca. Mar. 15, 2019) ("the amendments made in [Section 102(b)(2) of the Act] only take effect when the Attorney General completes the 'risk and needs assessment system' required by Section 101(a) of the Act") (alteration added); <u>Greene v. Underwood</u>, Civil Action No. 4:19-CV-160-Y, 2019 WL 1531673 at *1 (N.D. Tex. April 9, 2019) ("the good-time calculation provisions of the [First Step Act] 2018 amending § 3624(b) did not become effective when the law was signed on December 21, 2018"); <u>Kilkenny v. White</u>, Civ. No. 1:19-CV-0321, 2019 WL 2093240 at *2 (M.D. Pa. April 22, 2019) ("the amendments to 18 U.S.C. § 3624 shall not take effect until mid-July 2019.")

D.   <u>Constitutional Avoidance Canon</u>

Although judicial inquiry is usually complete when a statute is unambiguous, Petitioner contends that the delayed effective date violates the Due Process and Equal Protection Clauses of the Constitution.

> Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems. But a court relying on that canon still must interpret the statute, not rewrite it.

Jennings v. Rodriguez, 138 S. Ct. 830, 836 (2018). The canon of constitutional avoidance "'has no application in the absence of ambiguity.'" Warger v. Shauers, 574 U.S. 40, 135 S. Ct. 521, 529 (2014) (quoting United States v. Oakland Cannabis Buyers' Cooperative, 532 U.S. 483, 494 (2001)). Although the Court finds no ambiguity in Section 102(b)(2) of the Act, the Court will address Petitioner's constitutional avoidance argument in the alternative.

Petitioner contends that a delayed effective date would (1) violate the Due Process Clause because federal prisoners have a protectable liberty interest in the statutory right to good time credit provided by 18 U.S.C. § 3624(b); and (2) a delayed effective date would violate the Equal Protection Clause because it would require greater-than-intended incarceration for the class of well-behaved prisoners who, but for the delayed effective date, would be immediately released from incarceration. Respondent counters that Petitioner has no Due Process Claim because he is not presently entitled to benefit from the new computation method; and he has no Equal Protection Claim because the new computation method

applies equally to all inmates, no matter if their convictions occurred before, on or after the effective date of the amendment.

"Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct." Denny v. Schultz, 708 F.3d 140, 143 (3d Cir. 2013) (citing 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20 (2008)). "When such a statutorily created right exists, 'a prisoner has a constitutionally protected liberty interest in good time credit.'" Id. at 143–44 (3d Cir. 2013). Here, the statute that creates a protected liberty interest in GCT for Petitioner is that defined by the presently effective version of § 3624(b)(1), which the Supreme Court held is based on time actually served. Barber, 560 U.S. at 488–89. The BOP has calculated Petitioner's release date in accordance with the GCT computation  presently in effect (Clark Decl., Ex. 1, ECF No. 8-3 at 2-8); and therefore has not deprived him of a constitutionally protected liberty interest.

For his Equal Protection Claim, Petitioner asserts that he is in a class of well-behaved prisoners who will serve more time incarcerated than other well-behaved prisoners. Thus, prisoners who would be entitled to immediate release if the GCT "fix" in the First Step Act was effective immediately will spend a longer time in prison than those prisoners who would not be entitled to release before the effective date in July 2019.

"The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." United States v. Windsor, 570 U.S. 744, 774 (2013)). "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)).

The due process right to GCT is created by statute; and prisoners have a right to GCT only as defined by statute. See Holman v. Cruz, Civil No. 08-647 (RHK/JJK), 2008 WL 5244580, D. Minn. Dec. 15, 2008)("Prisoners do not have a liberty interest—unless statutorily created—in opportunities to obtain GCT credits") (citing Wolff v. McDonnell, 418 U.S. 539, 557 (1974); Moorman v. Thalacker, 83 F.3d 970, 973 (8th Cir. 1996) Albers v. Ralston, 665 F.2d 812, 815 (8th Cir. 1981)). Thus, heightened review under the Equal Protection Clause is not required unless the statute "catergorizes on the basis of an inherently suspect characteristic." Nordlinger, 505 U.S. at 10.

Section 102(b)(2) of the First Step Act implicitly discriminates against inmates who would be eligible for immediate release if the Act were effective upon passage. This is not an inherently suspect classification. See e.g. United States v.

19

<u>Navarro</u>, 800 F.3d 1104, 1113-14 (9th Cir. 2015) ("[w]hen the [Sentencing] Commission enacts Guidelines treating one class of offenders different from another [by delaying the effective date of the guideline amendment] equal protection generally requires that the classification be 'rationally related to a legitimate governmental interest'") (quoting <u>United States v. Ruiz-Chairez</u>, 493 F.3d 1089, 1091 (9th Cir. 2007) (quoting <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 440 (1985)). The appropriate standard of review under the Equal Protection Clause is whether the difference in treatment between prisoners furthers a legitimate state interest. <u>See</u> <u>Nordlinger</u>, 505 U.S. at 11 (defining the rational basis standard or review); <u>Armour v. City of Indianapolis, Ind.</u>, 566 U.S. 673, 680 (2012) (quoting <u>Heller v. Doe</u>, 509 U.S. 312, 319-320 (1993) ("A classification neither involving fundamental rights nor proceeding along suspect lines ... cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.")

"On rational-basis review, … a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." <u>F.C.C. v. Beach Commc'ns, Inc.</u>, 508 U.S. 307, 315 (1993). The party attacking the legislative classification has the burden "to negative every conceivable basis which might support it[.]" <u>Id.</u> (quoting

<u>Lehnhausen v. Lake Shore Auto Parts Co.</u>, 410 U.S. 356, 364 (1973) (internal quotation marks omitted in <u>Beach Commc'ns</u>)).

Respondent argues that there is a rational basis for the delayed effective date, avoiding a situation where the BOP would have to recalculate, overnight, the sentences for the entire federal inmate population and process those entitled to immediate release. (Sur-reply, ECF No. 15 at 2.) Providing the agency time to recalculate sentences and process the release of prisoners is a rational reason to delay the amendment to GCT. <u>See</u> <u>Navarro</u>, 800 F.3d at 1110-14 (delayed implementation of Sentencing Guidelines Amendments 782 and 788 provided necessary time for review and preparation). Therefore, the Court need not interpret Section 102(b)(2) of the First Step Act to take effect immediately to avoid a serious constitutional doubt about the statute. Further, the Court declines to consider interim relief based on speculation that the BOP will miscalculate Petitioner's sentence when the Act goes into effect because Petitioner is not in custody in violation of the laws of the United States.

IV.  CONCLUSION

For the reasons discussed above, the Court will deny the habeas petition.

An appropriate Order follows.

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**UNITED STATES DISTRICT JUDGE**

**Dated:** **June 5, 2019**